UNITED STATES *v.* MARSHALL FIELD & Co. (No. 3822)[1]

[1] T. D. 47495.

United States Court of Customs and Patent Appeals, January 7, 1935

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Richard E. FitzGibbon*, special attorney, of counsel), for the United States.

*James W. Bevans* for appellee.

[Oral argument October 11, 1934, by Mr. Lawrence; submitted on brief by appellee]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal by the United States from a judgment of the United States Customs Court, Second Division, which judgment sustained in part a protest of appellant against the classification of certain merchandise by the collector at the port of Chicago under paragraph 1529 of the Tariff Act of 1930 and assessment of duty thereon at the rate of 90 per centum ad valorem, the trial court holding the merchandise to be properly dutiable at the rate of 40 per centum ad valorem under the provisions of paragraph 923 of said tariff act.

After the decision of the Customs Court herein, the Government moved for a rehearing of the case, which motion was denied.

The merchandise was described in the report of the collector as follows:

Description of merchandise and assessment: The merchandise consists of burnt-out laces and lace articles, assessed for duty at 90% advalorem under par. 1529, act of 1930.

The report of the appraiser, accompanying the report of the collector, contains the following:

The merchandise consists of burnt-out laces and lace articles. Advisorily returned for duty under par. 1529 at 90%.

Remarks: The laces are in the form of edgings, insertings, or flouncings and the lace articles are collars.

The competing provisions of said tariff act read as follows:

PAR. 1529. (a) Laces, lace fabrics, and lace articles, made by hand or on a lace, net, knitting, or braiding machine, and all fabrics and articles made on a lace or net machine, all the foregoing, plain or figured; lace window curtains, veils, veilings, flouncings, all-overs, neck rufflings, flutings, quillings, ruchings, tuckings, insertings, galloons, edgings, trimmings, fringes, gimps, and ornaments; braids, loom woven and ornamented in the process of weaving, or made by hand, or on a lace, knitting, or braiding machine; and fabrics and articles embroidered (whether or not the embroidery is on a scalloped edge), tamboured, appliqued, ornamented with beads, bugles, or spangles, or from which threads have been omitted, drawn, punched, or cut, and with threads introduced after weaving to finish or ornament the openwork, not including one row of straight hemstitching adjoining the hem; all the foregoing, and fabrics and articles wholly or in part thereof, finished or unfinished (except materials and articles provided for in paragraph 915, 920, 1006, 1111, 1504, 1505, 1513, 1518, 1523, or 1530 (e), or in Title II (free list), or in subparagraph (b) of this paragraph), by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of filaments, yarns, threads, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile, 90 per centum ad valorem.   *   *   *

PAR. 923. All manufactures, wholly or in chief value of cotton, not specially provided for, 40 per centum ad valorem.

Two questions are presented to us upon this appeal—one a question of law and the other a question of fact. The question of law is whether said paragraph 1529 (a), properly construed, excludes "burnt-out laces" from its provisions, and the question of fact is whether the merchandise here involved consists of "burnt-out laces" or consists of specific articles designated *eo nomine* in the paragraph as "insertings," "edgings," or "trimmings."

One witness testified in behalf of appellee; the Government offered no testimony.

Appellee's witness testified that he was the buyer for appellee of the merchandise here involved; that the merchandise was bought in Germany by the yard and sold by the yard in the United States by appellee; that he buys both foreign and domestic laces; that merchandise such as is here involved was bought and sold by him as "Venice lace," and that laces like those involved were known as

"Venice laces," and that the merchandise in question was imported in pieces of from 12 to 36 yards each.

While the witness did not use the words "burnt-out laces," he did testify positively that the merchandise in question consists of lace. He further testified that he had observed in Germany the process of making such lace as is here involved, and from such testimony it appears that cotton thread is sewn or stitched upon a background of animal-fiber cloth by the use of an *embroidery machine*. Thereafter the whole article is put into an acid bath which erodes the animal fiber and leaves the cotton intact, thus producing a lace. After the lace is taken out of the bath the only work applied to it is a brushing by hand for the purpose of cleaning it. Clearly the product of the process described by the witness is what is known as "burnt-out lace."

In the publication "The Lace Dictionary," by C. R. Clifford, published in 1913, "burnt-out lace" is described as follows:

Burnt-out lace. Term applying to lace made by embroidery methods, the embroidery being of one material, the background being of another material. This background susceptible of destruction by acid bath leaving thus a lace, the material of the embroidery being unaffected.

In the Summary of Tariff Information, 1929, compiled by the United States Tariff Commission for the use of the Committee on Ways and Means of the House of Representatives, we find the following at page 2027:

Burnt-out lace, also known as etched lace, embroidery lace, and Plauen lace, is made by embroidering on a specially prepared cloth and then removing this foundation material by chemicals or heat. The finished product is an openwork embroidery fabric which is commercially known as lace.

Paragraph 1430 of the Tariff Act of 1922 provided, among other things, for—

Laces, lace window curtains, burnt-out laces and embroideries capable of conversion into burnt-out laces, nets and nettings, embroidered or otherwise, * * *

at the rate of 90 per centum ad valorem. Said paragraph also provided for "embroideries not specially provided for" at the rate of 75 per centum ad valorem.

Paragraph 1529 (a) of the Tariff Act of 1930 omits the specific provision for burnt-out laces, and also omits the specific provision for "embroideries not specially provided for" found in said paragraph 1430 of the Tariff Act of 1922.

After citing a number of authorities, the trial court in its decision said:

After a careful consideration of the authorities hereinbefore quoted and cited we hold that by the deliberate omission from said paragraph 1529 (a) of the provision for "burnt-out laces" contained in paragraph 1430 of the Tariff Act of 1922, the Congress has evidenced a clear intent to exclude from the provisions of paragraph 1529 (a) burnt-out laces. * * *

The Government in its brief undertakes to explain the omission of any provision for burnt-out laces in said paragraph 1529 (a) as follows:

The inclusion of the words "burnt-out laces and embroideries capable of conversion into burnt-out laces" in the "lace" part of this paragraph at 90 per centum at valorem, shows that Congress, fearing that this type of merchandise might be held dutiable at only 75 per centum ad valorem as embroideries, evidenced a clear intent to provide for this type of embroidery at the same ad valorem rate of duty as applicable to laces. Because this tariff act [Tariff Act of 1922] was the first one to treat laces and embroideries at different ad valorem rates of duty, such eo nomine designation became necessary to clearly express the legislative intent.

In Paragraph 1529 of the Tariff Act of 1930 (supra), however, Congress reverts to its old method of treating laces and embroideries at the same ad valorem rate of duty. The necessity, therefore, of distinguishing between laces and embroideries, and burnt-out laces and embroideries capable of conversion into burnt-out laces is no longer apparent, and Congress again omits these distinguishing words from the language of the paragraph.

The correctness of this reasoning is borne out by reading Tariff Adjustment, Committee on Ways and Means, Vol. 14, page 7522, in which the brief of the National Council of American Traders and Importers and the Lace and Embroidery Association of America contains these words: "Burnt-out laces are really embroideries with the ground removed and should carry the same rate as embroideries."

There are two reasons why this position of the Government as to the proper construction of said paragraph 1529 (a) can not be concurred in. The first is that Government counsel incorrectly assume that embroideries as such are provided for in said paragraph. Not only is the provision for burnt-out laces omitted from said paragraph 1529 (a), but the provision for "embroideries not specially provided for" is also omitted. Therefore we cannot ascribe to Congress the intention to omit burnt-out laces upon the theory that under said paragraph 1529 (a) burnt-out laces would be classifiable as embroideries at the same rate of duty as is provided for laces. The second reason is that not only is the provision for burnt-out laces omitted from said paragraph 1529 (a), but the kind of laces that Congress intended should be included therein are defined by providing that they shall be made by hand or upon certain kinds of machines, to wit, "a lace, net, knitting, or braiding machine." It is established that the lace here in question was not made upon any machine described in paragraph 1529 (a), nor was it made by hand. It was made by use of an embroidery machine, which is not named in said paragraph.

Clearly here the doctrine of expressio unius est exclusio alterius applies, and laces, and lace articles not eo nomine provided for, made in any way other than those specifically prescribed in paragraph 1529 (a), are clearly excluded therefrom. Whether articles eo nomine

provided for in the paragraph, when made out of burnt-out lace, are included therein, we need not here determine for the reasons hereinafter set forth.

We are therefore in accord with the view of the trial court that burnt-out laces, made on an embroidery machine, are not included within the provisions of said paragraph 1529 (a) for "laces, lace fabrics, and lace articles," but are dutiable, when made of cotton, under paragraph 923 of said tariff act.

The next question is one of fact, viz, whether the merchandise here involved consists of burnt-out laces, as described by the collector, or of insertings, edgings, or trimmings, and therefore dutiable under these *eo nomine* provisions in said paragraph 1529 (a).

Upon this point we would first observe that the merchandise was described by the collector as consisting of burnt-out laces and lace articles. It is true that the report of the appraiser, while stating that the "merchandise consists of burnt-out laces and lace articles," also states, under the head of "Remarks," that "The laces are in the form of edgings, insertings, or flouncings and the lace articles are collars." If in the opinion of the collector the merchandise here in question consisted of "insertings," "edgings," or "trimmings," provided for in said paragraph 1529 (a), it was his duty to so describe it. He was not bound to accept the description of the merchandise made by the appraiser. *United States* v. *Gandolfi & Co.*, 12 Ct. Cust. Appls. 455, T. D. 40615; *Doap Leun Hong Co.* v. *United States*, 19 C. C. P. A. (Customs) 313, T. D. 45481. The collector having in his official report stated that the merchandise consisted of burnt-out laces and lace articles, the presumption is that such was the character of the merchandise. Appellee accepted such description and contends that it is correct.

Upon cross-examination by Government counsel, appellee's witness testified that the merchandise in question is known as "trimmings." This testimony, standing alone, would be persuasive that the merchandise involved should be classified as such; however, taking the testimony as a whole, we do not think that such a conclusion is warranted. The witness testified positively upon direct examination that he bought and sold such merchandise as is here involved as "Venice lace", that such laces are known as "Venice laces", and that as imported the merchandise had not been fashioned into any definite article other than lace. Upon cross-examination he testified that such merchandise has many uses; that it is used to adorn dresses, as collars and cuffs, and is used for pillow making. We quote his testimony with respect to "trimmings" as follows:

X Q. Describe the adornment of dresses.—A. The lace is put around the neck—the neck line of the dress.

X Q. Where else; is there any particular name used for that? What did you call that?—A. Collars and cuffs.

X Q. What else is it known as?—A. Neckwear.

X Q. Is it known as trimmings?—A. Yes, sir.

He also testified that the merchandise could be used as an edging.

In our opinion this evidence is not sufficient to overcome the presumption of the correctness of the description of the merchandise made by the collector, and in fact we think the testimony, taken as a whole, fairly establishes that the merchandise consists of laces of a kind not embraced in said paragraph 1529 (a).

Government counsel before the trial court moved for a rehearing, and one of its grounds therefor was that it could and would produce evidence "to support the contention of the Government that this merchandise is *commercially known as edgings, insertings, flouncings, and collars.*" (Italics ours.)

It is significant that in this motion no claim is made that such merchandise is known as "trimmings," commercially or otherwise. It is also significant that in the appraiser's report, under the title "Remarks," there is no reference to the merchandise as "trimmings."

It is true that there is no reason apparent to us why burnt-out laces, such as are here involved, should not have been included in said paragraph 1529 (a), but the courts cannot legislate and may only interpret the laws made by Congress. As well stated by the trial court, "It is for us to interpret the will of Congress, rather than to usurp its province by writing amendments to its enactments."

We have assumed that all of the merchandise involved in this appeal was described by the collector as "burnt-out laces." It is true that his report also refers to "lace articles." We find from the invoices that certain items named in the protest, viz, items "Lay Bro. 3513, 3514, 3515," were invoiced as "cotton guipure, collars, burnt-out laces," and we further assume that these are the "lace articles" referred to by the collector. Inasmuch as the judgment entered by the Customs Court did not sustain appellee's protest as to said last-mentioned items, and no appeal has been taken by appellee with respect thereto, such articles are not before us for consideration.

We find no error in the decision of the trial court, and its judgment, insofar as appealed from, is *affirmed.*